Thank you, Your Honor, and with the court's permission, Judge Fletcher, I'd like to reserve five minutes of my time for rebuttal. Keep your eye on the clock and we'll try to help. May it please the court and good afternoon. Your Honors, on January 13, 2010, the United States Supreme Court issued an extraordinary emergency order blocking then-Chief Judge Vaughn Walker's efforts to broadcast the trial proceedings in this case. The next morning, January 14, Judge Walker ordered that the video recording of the trial proceedings should continue, but in response to... Counsel, if I may, because I think we're all pretty well familiar with the background of this case, I'd like to start by asking you a few questions of a procedural nature. Yes, Judge Becerra. The first question procedurally that I want to ask you is the consequence of the Supreme Court's dismissal of the mandamus appeal from California. At the time of the early case back in 2010, the Supreme Court granted cert and vacated the judgment below and remanded to the Ninth Circuit with instructions to dismiss the case as moot. What is the actual consequence of that action to this case? Your Honor, I don't know that it has any consequence to this case. It obviously indicates the Supreme Court's conclusion at that point in time that the case was moot, given this court's 2012 determination that the video recordings had to remain under seal. It was moot because the case had not been broadcast intra-court, correct? Well, that is certainly one reason that it is moot, Your Honor. I would submit to you that it was also moot because the Supreme Court read this court's decision in 2012 the same way that I read this court's decision in 2012, which is its foreclosing. Wait a second. The dismissal was in 2010. I'm sorry, Your Honor. I think we're talking about two different Supreme Court orders then. I apologize. Right. I'm talking about the 2010 dismissal. You're talking about the 2010 dismissal. That's correct. I apologize, Your Honor. I was talking about the Supreme Court's dismissal of the cert petition that we later filed and asking the court to review the continued recording of the trial proceedings. Of course, in 2010, that's correct. The Supreme Court dismissed the petition before it as moot because it had entered a stay, directing specifically in that case that Judge Walker not livestream the trial, and he had complied with that specific order of the Supreme Court. All right. Now, the livestream order at that time was not livestreamed to the public. It was livestreamed intra courtroom, right? And that is true, Your Honor, because at the point when the Supreme Court issued its stay order, the Ninth Circuit had not allowed any livestream to the public because it had not figured out the mechanics of it, is my understanding. Well, that seemed to be not relevant to our point of view. I think what may be relevant, though, is that the issue that is now before us was before the district court in 2018. Yes, Your Honor. In 2018, the district court concluded that the common law right of access applied to the trial proceedings that had been placed in camera, and it seems to me that that would be the law of the case that would really kind of make our appeal today irrelevant if we said that was the law of the case. So it seemed to be pretty important as to what happened to that decision. And as I read the briefs and the record, it found that the interest in judicial integrity identified by the Perry three panel remained a compelling reason to maintain the recording seal until its presumptive expiration pursuant to the local rules. That's from bench memo, not from the record quote. Now, if that's true, then that issues here, except for one thing, and that is there was an appeal to the Ninth Circuit of that trial court ruling, and a panel of this circuit dismissed that appeal for lack of jurisdiction, saying that the order wasn't final or appealable as a collateral order. So, so far, law of the case remains intact. Uh, what's happened to that ruling? Your Honor, what happened is that that cannot be the law of the case that controls this court's decision as to whether or not the common law of access applies, because I never had an opportunity. It was appealed. It was dismissed. It was appealed. Your Honor, it seems to me when so what do you what would be your squawk? Your Honor, it was dismissed with for lack of jurisdiction because of the non appealable order, and the court was careful. Your Honor to know in the dismissal order that the dismissal was without prejudice to us taking a further appeal. Once there was a final order that we could take up, I submit to your Honor, it simply cannot be the case that the district court by entering an order in favor of the in favor of us procedural right in 2012 that this court decided it did not have jurisdiction to review now prevents this court from reviewing the very question it earlier could not review because there was no final order. Alright, so your position is just to be clear that the appeal today is a functionally an appeal of that 2018 decision. Your Honor, it has to be an appeal that at least encompasses that that 2018 decision for our appellate rights to have been meaningfully preserved. And I would note that neither appellees has has said anything to the contrary or suggested that the issues decided in that 2018 decision are not before this court today. Thank you. Those are my procedural questions. Thank you. Thank you, Your Honor. So we would submit to you that in 2012 and this is very relevant for today. This court, of course, decided that the two promises that Judge Walker made back in 2010 were binding commitments were unequivocal commitments that the video recordings that he made of the bench trial in 2010 would not see the light of day. And yes and no. I mean, I read Judge Reinhart's opinion. In fact, I read it a couple of times. And it seems to me that it says two different things within the course of that opinion. The first thing it says in sort of the order in which it appears in the opinion is the sentence or sentences that are attached to footnote from it. It says not releasable in the immediate in the foreseeable future. That doesn't say never releasable. And it strikes me that that's probably in there as a result of Judge Hawkins question and the answer from counsel during argument. Later in the opinion, Judge Reinhart says it was unequivocal and not time limited promise. I think he says two different things. Your Honor, he certainly says he certainly includes in that opinion six words and a footnote. That is correct. The six words are that the tapes could not be released at least in the foreseeable future. And the footnote reproduces the district court's local rule seventy nine five then subsection F without comment or discussion. The 10 year the 10 year period, which pretty much replicates the answer that counsel gave in response to Judge Hawkins question. Well, I do and I do want to talk about that exchange and oral argument, Your Honor, but just a button this point down. So I agree that that passage and footnote, of course, are in the court's decision in Perry. There's also the passages that you cited would very clearly indicate that the court viewed the videotapes to be under under lock and key indefinitely. The way that I would those provisions, Your Honor, and their presence in Judge Reinhart's opinion is I think the footnote and the reservation do indicate that the court's holding in Perry, the square holding, does not does not reach the disposition of the videotapes after 10 years. I think that reservation and that footnote take that outside the ambit of the court's holding. But the court reasoning. But also the sentence to which the footnote is appended is describing what the court says Judge Walker said. It's not describing the court's holding. It's describing what Judge Walker said. It's interpretation of what Judge Walker said. Um, places in which it says Judge Walker said things and Judge Walker appears to have said two different things according to Judge Reinhart. Well, Your Honor, fortunately, we can look at the record and see and see what Judge Walker said, actually. Right. And what Judge Walker did said, and of course, the court is familiar with it because Judge Reinhart reproduced the relevant commitments, but he made two of them. The first is that the recordings that he was making would be used in chambers for purposes of him crafting his findings of fact, but that they would not be the purpose for the purpose of public broadcast. And then on August 4th, and in his opinion, striking down Prop 8 is unconstitutional. He again reaffirmed that the potential for broadcast of the recordings had been eliminated. Your Honor, he did not say they had been delayed for 10 years. He did not say that they would not be used for the purpose of public broadcast in the immediate future or the foreseeable future. He said the possibility had been eliminated. So I would submit to you, Your Honor, I do think it's important to look at the scope of what Judge Walker promised because that's the fulcrum, of course, of the answer given to Judge Hawkins question. The briefing to our panel this time around attaches enormous importance to it, as if it's a waiver of any argument that the 10-day presumptive period under the rule doesn't apply. What do we do? Yes, Your Honor, and I think I have to say, I read this as really the principal leg upon which a pelly stool stands. This statement that my colleague, Mr. Thompson, made in 2011 in that exchange with Judge Hawkins. And so I think it's important to be very careful about what Mr. Thompson did and did not say in that exchange. And I'll begin with what he did say. He did very clearly indicate that Rule 79-5 and its presumptive 10-year default rule would apply to the recordings. And that, I will grant you, Your Honor, is in tension with the view that upon reflection we now have of Rule 79-5. Let me read to you his answer, if I can. The question from Judge Hawkins is whether the plans were, quote, under the impression that seal. The counsel on your side says, no, Your Honor, I believe that the seal lasts for, not necessarily because of the better answer, the seal lasts for 10 years under the local rule, under the trial proceedings, then we will be entitled to go in and ask for an extension of the time of the specific date. But it would be a minimum of 10 years. I mean, that's a pretty clear answer. He says, listen, no, it's not our impression. So, Judge Fletcher, if I might continue my explanation for why I think you and the Peleys, the Peleys at least, are overreading that answer. My first point, my first point is that I apologize, Judge Fletcher, I think we're getting lost in the cross-traffic here. Okay, go ahead, please. So, I do think that is very clear as to whether or not Rule 79-5 applies to the recordings. I do not think that is binding upon this court, and I don't think it is preclusive, us from now offering upon reflection what we think is the better reading of Rule 79-5. And I'm happy to talk about that, but I want to set that aside for a moment because the really key point is what Mr. Thompson did not say. And what Mr. Thompson did not say is that the judicial integrity interest in keeping the necessarily expire after 10 years. What he said very clearly, Judge Fletcher, is that under Rule 79-5, after 10 years, a default rule kicks in. And what the default rule says is that if we want to continue to keep the recordings under seal, if we want to continue to stand on Judge Walker's promise after 10 years, the burden is on us to come into disparate court and to ask him to do that. And as Mr. Thompson says just a moment after the exchange that you showed, Judge Fletcher, we have maintained, we maintained before the district court, we maintained in 2011, we maintained before the district court now in 2018 and today, that the judicial integrity interest in keeping faith with the solemn promises that in open court is a compelling one. It's a compelling one that overrides any First Amendment right of access, any common law right of access. And of course, it is good cause, it is good cause to extend that seal under Rule 79-5G. And nothing that Mr. Thompson said suggested it would cease to be good cause after 10 years. Nothing that Mr. Thompson said suggests that, just, Your Honor, suggests that we would have to show some other kind of good cause. I'm raising my hand because I would like to speak. I'm sorry, Your Honor. No, it's not your fault. It's hard with this back and forth. So I'm not rebuking you. In the ordinary courtroom, we easily understand when an interruption is coming and it's hard for this. Please understand, this is in no way a rebuke, although I was teasing a little bit about I'm raising my hand. Okay. I've got a different question. I understand your position and it seems to me, I've got a different question. And that is, I'm looking in the record for any statement by any of the parties to the underlying lawsuit, or any of the witnesses to a lawsuit that they care. And I'm trying to figure out who cares. And the reason I'm trying to do that, I'm trying to figure out if we even have a case for controversy. I understand that you care, but that you care, you're the lawyer, you're representing people. So is there anybody that you're representing that cares? And where do I look in the record to find out that somebody whom you're representing cares? Your Honor, we, of course, have been litigating this case on behalf of clients. I would say that I think the attorneys involved in the trial, as well as the witnesses, have a reliance in Walker's promises. But certainly we represent the proponents, Your Honor, and we have litigated this case with their knowing consent, of course, as any honorable lawyer would. Is there anything in the record in front of me that tells me, not statements of counsel, but record that tells me from their own statements, affidavits, testimony, whatever, that they care? Your Honor, there's no declaration or affidavit of anything. What there is, is what there is in every case, I would submit to you, Your Honor. And that is a member of the bar of the court litigating on behalf of their clients, has litigated the case in the interest of those clients, with the consent of those clients, and from the actions that we've and our clients continue to stand upon Judge Walker's promise in the judicial integrity interest that that promise was reserved three minutes for rebuttal, I'm happy to, of course, answer. That means I want to interrupt and ask another question. But there's a lot of evidence, a lot of statements in the record from people who have been your clients or testimony from people who were witnesses that they don't care. So it's not merely that there's an absence of evidence that they do care, whatever evidence, there's a lot of evidence I have that they affirmatively say, fine with me, you know, I'm entitled to enforce the promise, but I'm not interested in enforcing the promise. I'm not sure what you're, I'm not sure what, I'm not sure what you're referring to their Judge Fletcher. Of course, there are declarations from our opponents, from Mr. DeSalt's clients to that effect. And there's a variety of declarations from legal scholars and public interest organizations and so forth, but I'm not aware of any. Can I ask a quick question just to interject? If we were looking at Article 3 standing, what would you say was the injury in fact to your clients? Yes, Your Honor, the injury in fact is that the judicial integrity interest in keeping faith with Judge Walker's promise is, of course, a structural interest. The entire society is harmed when the promise of the judge is broken, but we are specifically harmed. My clients are specifically harmed because we are the beneficiaries of that promise. We were the one who received that promise, who essentially extracted that promise by taking an emergency appeal up to the United States Supreme Court. So of course, we have an injury, a specific concrete and particularized injury, if Judge Walker's promise to us is thrown out the window. With the court's permission, I would like to reserve the balance of my time for rebuttal. Yes, please reserve your time, and you just have to reserve a little more. We'll make sure not to cut you off. Thank you, Your Honor. Mr. Burke or Mr. DeSalt? It's Chris Dusso. I will be going first, Your Honor. Your Honor, good afternoon, and may it please the court, Chris Dusso gets it done on behalf of the plaintiffs. I'd like to start, I want to be sure that I address the points that the court's already been discussing with opposing counsel, and I'd like to start, Judge Fletcher, with your question as terms of who cares at this point. I think it's extremely important, since you're reviewing Judge Oreck's decision for abuse of discretion, to look at the reasoning that he focused specifically and put great importance on the complete lack of evidence that the proponents had put forward that this mattered to anyone on their side. It certainly matters to folks on our side. We submitted 15 declarations, but at ER 3, Judge Oreck has a paragraph, and I'll just read it for the benefit of the court. Significantly, the proponents again who testified on behalf of the proponents wants the trial recordings to remain under seal. There is no evidence that any proponent or trial witness fears retaliation or harassment if the recordings are released, nor is there any evidence that any proponent or trial witness on behalf of proponents believed at the time or believes now that Judge Walker's commitment to trial recordings would remain under seal forever. This is an abuse of discretion review, and the court looked at the record and said the proponents had years to put together a good showing about why there was some compelling interest, and they came in with no evidence whatsoever. And it was not an abuse of discretion on that stark record for Judge Oreck, the district court, to hold as he held. Now, is there anything in the visual record that was not public at the time in the courtrooms themselves? You mean on which issue, Judge Massaro? Do you mean on... Well, it just seems to be that this is really a tempest in a teapot because the hearing itself was in an open courtroom. Everything that occurred in that courtroom was open to the public. The only thing that this dispute is about is whether a camera version, a video version, of the very same thing that was public at the time can now be released. Am I wrong about that? You are not wrong about that, Your Honor. And I would say this may well be the least confidential sealed document that you will ever confront in your judicial career because every single bit of it took place in open court. Now, that doesn't mean that it doesn't matter. That doesn't mean that it's not important. I think the conduct of all the parties reflects an understanding that the video recording has a value that goes beyond reading the printed word. But it is striking that everything on this tape is public already. The 10-year rule of the local rules applies to material that actually is confidential, that is sensitive at the time. This is something that was public the day the tape was created. So I do think you're exactly right. I think that's an extremely important point. I also wanted to respond to the question about the Ninth Circuit's decision in 2012. And I'm mindful of Judge Fletcher's question in terms of whether there are statements that seem incompatible. I do think the proponents greatly underplay the value of the statement which refers to the foreseeable future and then immediately cites to the 10-year rule of the local rule. And it's for this reason, when the court made that statement at page 185 of its decision, what it was discussing was what is the assurance on which the proponents reasonably relied on which we are now going to base this judicial integrity interest. And it's defining the assurance. And the assurance, which becomes the reason, according to the court, is that the proponents reasonably relied on Chief Judge Walker's specific assurances, compelled by the Supreme Court's just-issued opinion, that the recording would not be broadcast to the public at least in the foreseeable future. See footnote 5. Everything becomes unsealed absent some other showing after 10 years. Now, it is true that the court in 2012 didn't repeat the foreseeable future every time it This passage is a critical one because it specifically defines the assurance on which, according to the court, the proponents reasonably relied. It's also important to note that in two different places in the decision in 2012, this court made clear that the timing did matter. So at page 1080 of the 9th Circuit's 2012 decision, it has a specific reference to whether the public is entitled to view that recording some two years after the trial. And then at page 1081, when discussing what the question is on appeal, it says that in the unique circumstances where the court prepares the videotape and then places it in the record and seals it, may it, quote, shortly thereafter, close quote, be disclosed. Timing was a critical issue. And that's what Judge Orrick recognized. And that's why he made a different decision. Sorry, sorry. I should be waving my hand like that. Point is the video recording that Judge Walker had made. At what point did that actually did he put it in the record? Was it before or after he made the commitments? Or was it in between them? It was when he issued his ruling on the merits in August with that decision. So the two representations, one is at the beginning of trial. So it wasn't put in the record at that point. That's when he said, I'm going to use this for purposes of my review in chambers. He then ruled in on that. I've reviewed this. I've used it. I direct the clerk to put it in the record and seal it. And my understanding is because he had used it and considered it when reaching his judgment. So when they were relying on the statement initially, it wasn't a recorded document until after he actually issued his opinion that became concurrently issuing his opinion. Is that right? Well, I think that's true, Your Honor, with this caveat that the only representation that was made earlier was Judge Walker's representation that I'm not preparing it for purposes of televising and broadcasting, all of which is true. There was no knowledge that he was going to put it into the, or had he indicated an intent to put it into the records, the official records? I think that's right, Your Honor, that he hadn't stated at that time. Now, I think that lawyers, if a judge says, I'm going to consider this as part of the record and part of what I look at when I make my decision, it certainly makes sense that it could become part of the record. But I agree, he didn't say that at that time. But everything that he did was consistent with that initial representation. And there's really no dispute that he made the recording for that purpose and used it for that purpose. Could I ask one more question? You were referencing footnote five, and it's referenced the local rule. But the footnote also goes on to say, of course, it can be extended for another 10 years. I think the rule contemplates good cause. What, in your view, would be good cause for such an extension? So in my view, Your Honor, good cause would be that the circumstances that justify first instance or some comparably strong standard continues to exist. And here, because the compelling interest on which this court relied in 2012 was cabin by and tied to the 10 years, they didn't show that good cause. Well, I mean, the footnote you rely on goes on to say, with a proviso, another 10 years could be had. So I don't think that's quite right. But right, footnote five itself contemplates an extension. So I guess my question is, the 2012 opinion relied primarily on judicial integrity. And why would you say that isn't good cause for an extension? And just to clarify, Your Honor, the footnote doesn't say they can get another 10 years. It says that they can request an extension beyond the 10 years. So why isn't the judicial integrity interest a compelling interest today now that the 10 years has run? As Judge Oreck found, it was a compelling interest within the 10 years because the court put these materials under seal, indicated that the court would keep them sealed. And this court had found two years into the sealing that it would violate those assurances to reveal them. Once the 10 years has run, what the district court found, and I think it's absolutely correct, is that it is not reasonable to rely on the conduct below to assume that those documents will be sealed perpetually. So even though Judge Walker said in his that same opinion that the broadcast would be eliminated or the public broadcast would be eliminated, that's not sufficient. It's interesting because he has a reference when talking about the fact that plaintiffs still didn't frame most of their witnesses, even when the live broadcast was stopped. He does have the statement about the broadcast being eliminated. But on the very next page of his decision, he uses slightly different wording, and he says that the prospect of a contemporaneous broadcast had been eliminated. And the proponents never cite to that particular language in his decision, but it's just one page away. And so I think... That was the assurance then. Why shouldn't it be released after two years if it was only a contemporaneous broadcast that was precluded? Then that wouldn't really be a compelling interest, would it? Yeah. Judge Ikuto, we argued that it should be, but we're now living with... Oh, we're banned by our 2012 decision. Yeah. But the point that I think is critical is that there's nothing inconsistent about what the district court did here in 2020 with the decision in 2012. We believe that it should be unsealed in 2012, but this court ruled differently at that time under those circumstances. If I could make just one more point, I realize I'm almost out of time. The concession at the first argument in 2012, again, I think that's an area that state of mind and what they understood and knew is critical to the issue of reasonable reliance. And what Mr. Thompson admitted to the court was that we knew that this sealing would not necessarily be perpetual, that it could be unsealed. That point, aside from technical issues of the rule, the point of what they knew and understood is critical to the reasonable reliance issue. And I see that I'm out of time. Okay. Thank you very much. Mr. Burke. May it please the court, Thomas Burke of Davis Wright Tremaine on behalf of KQED. I want to take us back quickly to 2012 and addressing some of the questions that have come up. At that time, the trial had only recently been completed. The Ninth Circuit's merits ruling and ultimately the U.S. decision to affirm had not yet occurred. And even if the record shows that ER 355, the proponents were at that time arguing it was quite possible that this case will be retried in the future. So that's the setting. That's the setting when the 2012 decision was made by the Ninth Circuit. And yet now in 2020, none of those conditions in 2012 when the court was asked to unseal the trial video initially still exist. And I would submit that the meaning of judicial integrity must be informed by the particular settings and the controlling facts. It's not a static concept. And it has to be, you have to consider changed circumstances. It's otherwise abstract and without meaning. So are you saying a judicial promise or sort of like a time limited state? I think the promise, the context of the promise has to be evaluated closely. And I think if in this instance, the proponents have witnesses or people who are still concerned, they had the burden of providing the evidence that the district court did not find either in 2018 or in 2020. I don't know that I've answered your question. It's sort of like a marriage. You go till death do us part, but you actually got your fingers crossed. It's all, it's really means until we change our mind. Is that, that sort of thing? Well, Your Honor, I do think it's, of course, I'm not going to say judicial integrity. We'll never say judicial integrity is not important. It would like be condemning motherhood and apple pie. You're not going to be against it. But on the other hand, what's being asked here is what did the ninth circuit mean in 2012? And I think it's important to understand the context. And it's important to understand that the variables that were in play are no longer in play in 2020. I have one other question, which is why, and as Mr. DeSoto said, this is the least confidential piece of information ever. And I understand that, but there's transcripts of the trial that were actually performed with actors on stage and the like. And so what, why is it? Because that really cuts both ways, right? Why is it so important to play this recording? Because that's the reason, presumably, people want to see it and people want to keep it confidential. I think that's a great question. And I think it's because in our view, judicial integrity is enhanced by releasing these. Well, the record is unopposed that the release of the recordings would be invaluable to the legal scholars to better understand the dynamics of how the testimony went in and this historic change in American law. The recordings themselves provide a much richer understanding of the evidence. Judge Walker had access, as one point to emphasize, he had access to both the transcripts and the video, and he chose to use the recordings to help prepare his opinions because they brought the court back, presumably, to the testimony that he had seen and the emotion of it. And I think in the record, the plaintiffs have put in all of, on two different occasions, declarations from their clients about what an emotional moment this was. And, you know, in fact, also in the record, and this is at ER 421, the proponents put this in, there was an argument for Mr. Olson, one of the lawyers for the plaintiffs, who told at that time, Chief Judge Walker, I could not present a more compelling closing argument than simply replaying the testimony in its entirety from the four plaintiffs in Helen Zia. And to go back, to go back to the point that Judge Fletcher raised, the concern was, the plaintiffs had concerns about their own witnesses being recorded, plaintiffs who want the public to be able to see how they testified at trial. I mean, at base, this, yes, Judge Listero, I see your hand. I'm learning from my colleagues. I just want to get back to the 2018 District Court proceedings. Is it correct that the Ninth Circuit dismissal for lack of jurisdiction was without prejudice? Yes, Your Honor, it was. And back to the Supreme Court proceedings, because the Supreme Court did grant cert of this issue at the time. And as I understand the proceedings, the question was not public broadcast, but was intra-court broadcast, which is much more limited. And the court dismissed that case as moot, because the proceedings had already happened. The public had already been let in on everything that was to be seen, except for the video footage. And the trial court made it very clear that he was very careful, of course, because the Supreme Court had imposed a preliminary injunction, and he wasn't going to walk in the middle of that. Judge Walker wasn't, if you go ahead and televise it, only for his own use, and not for the purposes of a public broadcasting or televising. And yet, in a way, you're asking us to go ahead and rewind history, and in fact, let it out expressly for the purpose of public broadcasting and televising. And in that, just and I come back to the procedural point, that the Supreme Court had would not have dismissed it as moot, if in fact, the live issue of whether this could be made public for televising and broadcasting was in fact going to be the case. And that troubles me, I realize it doesn't trouble counsel at all, but would you address that, please? Yes, Judge Lucero, and I think that the emphasis on the word live, all of the concerns, I think, that have been expressed about broadcast have to do with a live broadcast. And certainly, the prospect of that is now completely gone in this case. This is a case that's already been tried, already been affirmed in the Ninth Circuit and the law of the land from the US Supreme Court, so that the issues that can come up with a live broadcast have been addressed. And I hope that answers your question. Well, you're saying that this is purely now historical, and of course, your colleague argue on the other side entirely disagrees. I yet heard from him any explanation as to what compelling interest wishes to keep the seal on these documents at this point, it just seems to me an academic and entertainment matter. Your Honor, I'm beyond my time. But if I can answer that, there isn't any showing and that's in reviewing the trial courts de novo, ruling de novo, you have to look for that evidence and they don't provide it. And so in that sense, this is, in our view, a shining moment for the federal judiciary. It's nothing to be hidden away. It's already been public. And there will be benefits that flow from having the recordings made public, both for academics, for those who could never attend the proceedings. And for those who can learn from this incredible trial that one of its kind. One quick question. I know you're over time. It sounds like you're saying that there are still strong feelings about this. Is that right? Is that part of the interest? I believe that's the case and the record supports it. We have put in the record of an ongoing interest, particularly the trial. Okay. Thank you very much. Now, Mr. Ohlendorf, you're set to reserve five minutes and we kind of ground you down a little bit. Why don't we put five minutes on the clock? I appreciate it, Judge Fletcher, and I'll try not to use all of it, but I appreciate the court's patience. I do want to begin with the question of proof and what proof there is that there remains a compelling interest preventing the public disclosure and broadcast of these video recordings. And the answer is very simple. It's exactly the same proof that was before this court in 2012. And that is it's a judicial integrity interest in keeping Judge Walker's promise. I understand there's an argument that at this point, the content of the videotapes is an academic matter or is it purely historical matter? With respect, Judge Lucero, Judge Walker didn't make the promise to you. Judge Walker made the promise to my clients. And I think my clients get to make the call because of that as to whether they still think it's in their interest to keep that promise answered, to keep that promise honored. If I can interrupt, you say it's your client's call. I'm still not entirely convinced that your clients are making the call because everything I've got in the record, and certainly I've got this from the district court, is your clients are identifying no reason why not to do it. Your Honor, the reason, and again, return to the point that I want to make, the reason is precisely the same as it was in 2012. And that is Judge Walker made us a promise. We want that promise to be kept. The reason, the court does not need to look any further behind the promise to determine whether we have good reasons for wanting the court to honor the promise that it made to us. I'll state it very plainly. I'm not at all convinced your clients have even directed you to do this because the evidence is so strong that they don't care. Your Honor, I don't think there's any evidence in the record. What I'm concerned about is the possibility of, and this is not a charge, but this is a question I have, is whether or not this at this point is lawyer-driven rather than client-driven. Your Honor, I will say to you, no one has made what would really be an astonishing charge that we are engaged in some sort of malpractice and not consulting our clients in this matter. And there is evidence in the record, Your Honor. I would point the court to an email where my colleague, Mr. Cooper, responded to a request from opposing counsel indicating that we had pulled our clients and that a critical mass of them continued to want Judge Walker's request honored. But Your Honor, so if I may, I want to make two points about the I think it's a bit of an overstretch on your argument to suggest that Judge Walker promised you that he would not make this public or broadcast it. That is not the context of his statement. I think it read pretty literally, and it's within the four corners of the document, he made the comment that he wasn't doing it for that purpose. But that does not equate to a promise to you not to do so. Your Honor, the first point I would make is that is plainly contrary to this court's decision in Perry, which held that it was in 2012, which held that it was unequivocally, both statements were unequivocally promises and binding commitments that the recordings would not be released. Well, that may be the law of the case, if that's what the panel said at the time, but certainly not initially. That's not stated in my reading as a promise. Well, Your Honor, he said it was not going to be for purposes of public broadcasting and televising. And he said in the August 4th opinion that the possibility of a public broadcast had been eliminated. I do want to note, my friend, Mr. DeSalle refers to another portion of that August 4th opinion where he uses the word contemporaneously. But in this portion, he didn't use the word contemporaneously. And the reason is obvious, and that is look at the argument he was responding to when he made that statement. He was responding to our explanation for why our witnesses, some of our witnesses would not testify at trial, which was because, and this is in the court's opinion, he quotes us as saying that those being made in that context where he said that is not a valid concern after I made clear that the potential for broadcast had been eliminated. Yes, Judge Fletcher. This is a separate question in terms of the answer given to Judge Hawkins' question. It occurs to me to wonder as to whether or not judicial estoppel would apply. Now, are you familiar with the concept of judicial estoppel? Yes, Your Honor. The position at one point during the case and then changing the position because it is no longer advantageous to have that position, but now you want a new one. Any lawyer knows in an argument in front of the district court, in front of the court of appeal, if you claim too much, you risk losing. So we had a fairly narrow claim, which is to say, no, we did not expect it to be sealed indefinitely. We understood that it might be unsealed after 10 years. That was the strategic answer then. You now have a different answer. Why are you not judicially estopped from changing the answer? Your Honor, if I can make two points in response to that. The first point is that under this court's doctrine governing judicial estoppel, I cite the court to the Arizona v. Tejada automation case, which we cite in our papers. Judicial estoppel does not apply unless number one, the court at that time accepted the representation of counsel and acted upon it and relied upon it. We don't think there's anything in the 2012 opinion that does that. Certainly the six words quoted by my friends on the other side and that footnote five does not cut the mustard, Your Honor. Number two, you have to show that there would be some kind of prejudice to the other side by allowing the party to change position. But the more important point, Your Honor, is again, there's nothing that I'm saying to you today that is intention or is because all Mr. Thompson said in 2012 is that after 10 years, if we wanted to continue to stand on Judge Walker's promise and one of the steel seals remain in place, we would have the opportunity to go back and make a good cause showing. And again, Your Honor, we have consistently maintained in 2010, in 2012 and today that the judicial integrity interest is a compelling reason. And that is not an interest. If I may make one final point with the court's indulgence. That is not an interest that's limited to 10 years. And we also know that by looking at the objective reliance, the consequences of my client's reliance in 2010 on those promises. And the consequence was we had obtained from the Supreme Court an extraordinary emergency order blocking broadcast of the trial. As this court said in 2012, there's every reason to believe that if we had Judge Walker, we would have gone immediately back to the Supreme Court and we would have prevented these recordings from being created at all. There would be no question about 10 years, 20 years, 50 years, they wouldn't exist. So that is that that is the action that we took and reliance on those promises. And it is not an action that has a 10 year expiration date. I want to make sure I understood what you just said. You stand by and agree with what your counsel Thomas Thompson said in response to Judge Hawkins. I think I just heard you say that. Yes, Your Honor, we stand by and agree with this. And that is that after 10 years, well, let me make let me make two points, Your Honor. Number one, we don't agree. And for the reason in our papers, we do not agree that Rule 79.5 applies at all to the videotapes. Because we think Rule 77.5, the rule preventing broadcast of the recordings, trumps that rule or supersedes that rule in this instance as the more specific local rule on point. We also think that Rule 79.5 by its text applies only to party file documents. So I do want to awfully long answer, please get to the point. What do you want to reserve those, those points? And because I want to be very candid with your honor, those points are contrary to what Mr. Thompson said in 2011. Because of the Tohono O'odham Nation case, I decided to you we don't think we're foreclosed from offering to you what we now think is the better interpretation of the court's local rules. But what is what is fully consistent with Mr. Thompson with what Mr. Thompson told this court in 2011, is if Rule 79.5 applies, what it means and all it means is that after 10 years, we get to go back, we have the option of asking the district you don't agree with them at all, then because you say if it applies, but you just told me it doesn't apply on the assumption. So I'm trying to argue in the alternative, Your Honor, that familiar lawyers device. And my alternative argument is that even if it does, I want to be clear about this. Mr. Thompson's answer was to the question, did you understand that this would be forever? No, no, that is true, Your Honor. And he said, and then he said, not necessarily is the better answer. And what not necessarily means is that after 10 years, we would get to go back. And if we could make a good cause showing we could ask for an extension. That's precisely what we did here. And the good cause is the same as same today as the good cause was in 2012. Your argument is you need to show good cause and you have done so. That's correct, Your Honor. What Rule 79.5 does in this instance is it gives us the option as the beneficiaries of Judge Walker's promise to either let the promise go after 10 years and not make a request to extend the seal. Or as we did in this instance, conclude that our interests are better served by holding the court to that promise and ask for an extension. Okay. Thank you. Thank you, Your Honor. I appreciate the court's patience. Of course. Thank you. Thank you. Thank all sides for their help. Very helpful arguments. That concludes our arguments for the day. Perry versus Holmes were submitted for decision and the court is now in adjournment until tomorrow afternoon. Thank all counsel. And we will see other people tomorrow. Thank you, Your Honor. Thank you, Your Honors. Thank you. This court for this session stands adjourned.
judges: Lucero, W. Fletcher, Ikuta